UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------X

ELOIDA RODRIGUEZ,

        Plaintiff,                   **MEMORANDUM & ORDER**

   - against –                  09-CV-1378 (KAM)(RER)

CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF EDUCATION, JEANETTE
SOSA, CHANCELLOR JOEL I. KLEIN

        Defendants.

------------------------------------X

**MATSUMOTO, United States District Judge:**

        Presently before the court is a motion for summary judgment by defendants City of New York, New York City Department of Education and Jeanette Sosa ("defendants"), pursuant to Federal Rule of Civil Procedure 56, seeking judgment and dismissal of plaintiff Eloida Rodriguez's ("plaintiff" or "Rodriguez") action.  In this action, plaintiff alleges employment discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., New York State Human Rights Law, New York Executive Law ("NYSHRL") § 296 and New York City Human Rights Law ("NYCHRL"), Administrative Code § 8-107.  Plaintiff alleges that defendants discriminated against her on the basis of her age.  (ECF No. 2, First Amended Complaint ("Amend. Compl."), dated April 9, 2009.)  For the reasons set forth herein, defendants' motion for summary judgment is granted.

## BACKGROUND

The following facts, taken from the parties'
statements pursuant to Local Civil Rule 56.1, are undisputed
unless otherwise indicated.  The court has considered whether
the parties have proffered admissible evidence in support of
their positions and has viewed the facts in the light most
favorable to the nonmoving plaintiff.

### A. Plaintiff's Employment with the Department of Education

Plaintiff was born on August 15, 1938.  (ECF No. 21,
Defendants' Local Rule 56.1 Statement of Undisputed Material
Facts ("Defs. 56.1 Stmt.") at ¶ 3; ECF No. 26, Plaintiff's
Local 56.1 Statement ("Pl. 56.1 Stmt.") at ¶ 3.)  In 1988,
plaintiff commenced employment as a paraprofessional with the
Department of Education at P.S. 106.  (Defs. 56.1 Stmt. at ¶ 4;
Pl. 56.1 Stmt. at ¶ 4.)  In 2005, plaintiff was assigned to
work at P.S. 151 in Brooklyn, New York.  (Defs. 56.1 Stmt. at
¶ 5; Pl. 56.1 Stmt. at ¶ 5.)  Plaintiff's duties at P.S. 151
were to tend to children and assist them with work.  (Defs.
56.1 Stmt. at ¶ 6; Pl. 56.1 Stmt. at ¶ 6.)  Plaintiff worked
with students in any grade that required her assistance,
including with Special Education classes.  (Defs. 56.1 Stmt. at
¶ 6; Pl. 56.1 Stmt. at ¶ 6.)

Defendant Sosa was the principal at P.S. 151 during
the period in which plaintiff was assigned as a

paraprofessional there. (Defs. 56.1 Stmt. at ¶ 7; Pl. 56.1 Stmt. at ¶ 7.) Ms. Sosa testified that she had been employed as an administrator since 1989 or 1990, and served as the principal of P.S. 151 since 2000. (Defs. 56.1 Stmt. at ¶¶ 8-9; Pl. 56.1 Stmt. at ¶¶ 8-9.)

Ms. Jenna Hoban was a special education teacher at P.S. 151 from September 2005 through end of the 2008 school year. (Defs. 56.1 Stmt. at ¶¶ 11-13; Pl. 56.1 Stmt. at ¶¶ 11-13.) From 2005 to 2006, Ms. Hoban taught special education kindergarten students who generally had had learning, emotional and behavioral issues. (Defs. 56.1 Stmt. at ¶ 13; Pl. 56.1 Stmt. at ¶ 13.) From 2006 to 2007, Ms. Hoban taught a first grade class as a collaborative team teacher with two full time special education teachers and a full time general education teacher. (Defs. 56.1 Stmt. at ¶ 14; Pl. 56.1 Stmt. at ¶ 14.) From 2007-2008, Ms. Hoban taught a second grade class as a collaborative team teacher. (Defs. 56.1 Stmt. at ¶ 15; Pl. 56.1 Stmt. at ¶ 15.) For all three years that Ms. Hoban taught at P.S. 151, except for the second semester of her second year, plaintiff was Ms. Hoban's classroom aide. (Defs. 56.1 Stmt. at ¶ 16; Pl. 56.1 Stmt. at ¶ 16.)

## B. Disciplinary Incidents

During the last year of plaintiff's tenure at P.S. 151, plaintiff had three disciplinary incidents. First, on

October 9, 2007, it is undisputed that plaintiff wrote a note, purportedly on behalf of the school, which stated that if a child's parents wanted their child to be fed at school, the child must arrive at school in time for breakfast, and if the parents did not bring their child to school on time in the morning, the child would have to be fed at home, thus indicating that the child would not get breakfast at school (the "10/07 breakfast note"). (Defs. 56.1 Stmt. at ¶ 45; Pl. 56.1 Stmt. at ¶ 45.) The note stated:

> Dear Parents,
>
> Please if you want your child [to] eat in school you has [sic] to send him to school early in the morning for breadfast [sic]. . If he coming [sic] late you has [sic] to feed him home.
>
> Thank you
> P.S. 151

(Defs. 56.1 Stmt. at ¶ 45; Pl. 56.1 Stmt. at ¶ 45.)

It is undisputed that the information in plaintiff's note was inaccurate. Although breakfast was officially served at P.S. 151 from 7:40 a.m. to 8:10 a.m., any child who qualified for a free breakfast under the program established by the United States Department of Agriculture, regardless of his or her arrival time at school, would receive breakfast. (Defs. 56.1 Stmt. at ¶ 42; Pl. 56.1 Stmt. at ¶ 42.) If a child arrived at school after 8:10 a.m., the student was sent to the

nurse for a pass, and then was brought to the cafeteria for
breakfast. (Defs. 56.1 Stmt. at ¶ 42; Pl. 56.1 Stmt. at ¶ 42.)

It is undisputed that Ms. Hoban and Ms. Rivera, the
guidance counselor, advised Ms. Sosa that upon receipt of the
10/07 breakfast note from plaintiff, the child's parent came to
school very upset, in part, about plaintiff's 10/07 breakfast
note. (Defs. 56.1 Stmt. at ¶¶ 44-48.)[1] Both Ms. Hoban and Ms.
Rivera each wrote a note to Ms. Sosa relaying the details of
plaintiff's note and the parent's reaction. Ms. Hoban's note
advised that plaintiff previously had been informed to leave
the situation with the student alone because ACS was involved.
(Defs. 56.1 Stmt. at ¶¶ 43-46.) On October 15, 2007, plaintiff
and her union representative met with Ms. Sosa concerning the
10/07 breakfast note. (Defs. 56.1 Stmt. at ¶ 50; Pl. 56.1
Stmt. at ¶ 50.) According to defendants, Ms. Sosa emphasized
that the 10/07 breakfast note was inappropriate for several
reasons, including that plaintiff did not have approval from
the administration to write a letter on behalf of the school;
that the letter threatened the parent that the child would be
denied food if he/she arrived late, and that the letter was
grammatically incorrect and contained an incorrectly spelled

_____

[1] Plaintiff does not dispute these facts, but raises a double hearsay
objection. (Pl. 56.1 Stmt. at ¶¶ 44-48.) The objection is not sustained
because the note and the parental reaction are not offered for the truth,
but rather to establish defendants' state of mind. Fed. R. Evid. 803.

word. (Defs. 56.1 Stmt. at ¶ 50.) As a result of this incident, Ms. Sosa suspended plaintiff for two weeks without pay, but could have terminated plaintiff's employment. (Defs. 56.1 Stmt. at ¶¶ 51-52; Pl. 56.1 Stmt. at ¶¶ 51-52.)

Plaintiff grieved her suspension with the assistance of a union representative, and a Chancellor's Representative conducted the grievance hearing. (Defs. 56.1 Stmt. at ¶¶ 55-56; Pl. 56.1 Stmt. at ¶¶ 55-56.) The Representative found that plaintiff was properly suspended for two weeks for her unprofessional behavior, that the suspension had a rational basis, and that the administration's actions were not arbitrary or capricious, nor discriminatory. (Defs. 56.1 Stmt. at ¶ 56.)

Plaintiff was involved in a second disciplinary incident to which she objects on the ground that defendants' 56.1 Statement refers to inadmissible hearsay. Defendants state that on March 7, 2008, Ms. Hoban reported by letter to Ms. Sosa (the "Hoban letter") that Ms. Hoban had received a call from a child's family member on March 6, 2008, stating that plaintiff had informed the child that the child could not have breakfast at school because the child had arrived late. (Defs. 56.1 Stmt. at ¶ 58.) According to the Hoban letter, the child's relative was "very distressed" that the child would have to go through the morning without eating. (Defs. 56.1 Stmt. at ¶ 58; ECF No. 22, Ex. J, Letter from Ms. Hoban, dated

March 7, 2008.)  Ms. Sosa testified that she spoke with the child's relative about the incident, and then spoke to plaintiff and plaintiff's union.  (Defs. 56.1 Stmt. at ¶¶ 60-61.)  Ms. Sosa also testified that plaintiff admitted to making the statement that if the child arrived late to school, plaintiff would not take her to breakfast, and stated that she did so because plaintiff knew how to handle the situation and Ms. Hoban did not.  (Defs. 56.1 Stmt. at ¶¶ 59, 61.)

In addition to objecting to these facts on the ground that they contain inadmissible hearsay, plaintiff denies that she told Ms. Sosa that she knew how to handle the situation better than the teacher did, however, plaintiff does not submit an affidavit or cite to admissible evidence in support of her denial.  (Pl. 56.1 Stmt. at ¶¶ 58-61.)  Moreover, whether or not plaintiff told Ms. Sosa that plaintiff knew how to handle the situation better than the teacher is not material. Furthermore, the plaintiff's hearsay objections are without merit because defendants are not offering the evidence to prove the truth of the statements asserted, but rather, to establish Ms. Sosa's knowledge and intent.  (See ECF No. 27, Defendants' Reply Memorandum of Law in Further Support of Their Motion for Summary Judgment ("Defs. Reply") at 8-10.)

It is undisputed, however, that on March 17, 2006, plaintiff, plaintiff's union representative and Ms. Sosa met to

discuss the allegation of professional misconduct that took place on March 6, 2008. (Defs. 56.1 Stmt. at ¶ 63; Pl. 56.1 Stmt at ¶ 63.) In a letter dated April 14, 2008, defendants informed plaintiff that Ms. Sosa had investigated the allegation that on March 6, plaintiff told a student that she would not eat breakfast at school because of the student's late arrival, that Ms. Sosa interviewed several students, and that three students had corroborated the allegation that plaintiff told them that they could not get breakfast if they arrived late to school. (Defs. 56.1 Stmt. at ¶ 63; ECF No. 22, Ex. K, Letter from Ms. Sosa dated April 14, 2008.) Although plaintiff denies that Ms. Sosa told her the results of the investigation on March 17, she does not deny that she received Ms. Sosa's April 14 letter. Plaintiff also denies that any child stated that he or she had been refused breakfast by plaintiff, and cites Ms. Sosa's deposition (ECF No. 22, Ex. C, Deposition of Jeanette Sosa, at 85), in which Ms. Sosa testified that no child told her that he or she had gone hungry because of something plaintiff did. (Pl. 56.1 Stmt. at ¶ 63.) Ms. Sosa's cited testimony, however, does not create a material factual dispute or support plaintiff's statement that "not one child stated that he or she had been refused breakfast by plaintiff." It is undisputed that plaintiff was asked if she wanted to

submit a written response to the allegation, and she declined to do so. (Defs. 56.1 Stmt. at ¶ 64; Pl. 56.1 Stmt. at ¶ 64.)

The third disciplinary incident occurred on March 7, 2008, when a seven or eight year old child in Ms. Hoban's class cut his wrist. (Defs. 56.1 Stmt. at ¶ 67.)[2] According to defendants, the student was on the rug while a faculty member read a story to the class. (Defs. 56.1 Stmt. at ¶ 71.) The student was fidgety and was having trouble sitting still, so the teacher asked him to go sit in his seat. (*Id.*) The student became very upset, and when Ms. Hoban went over to calm the student, the student had his hands inside his desk, where he had cracked a pencil sharpener and was attempting to cut his wrist with a sharp plastic part. (*Id.*) He cut himself inside the desk, took his hands out, and while looking at Ms. Hoban, smeared blood across his forehead. (*Id.*)

The parties do not dispute Ms. Hoban's testimony about the incident. Ms. Hoban testified that the school called the police and the child's mother, who "had a tendency to have a temper." (Defs. 56.1 Stmt. at ¶ 73; Pl. 56.1 Stmt. at ¶ 73.) Ms. Hoban further testified that when the child's mother arrived, she was very upset and screamed at her child, "This is

---

[2] Plaintiff does not deny that the incident occurred, but rather states that she did not witness the incident and objects to defendants' 56.1 Statement because it contains inadmissible hearsay. (Pl. 56.1 Stmt. at ¶ 67.) The fact that plaintiff did not witness the event, however, is not material because, as set forth below, plaintiff does not deny that she asked the child why he had upset his mother. (Pl. 56.1 Stmt. at ¶ 70.)

it.  I don't want you anymore.  I'm giving you up.  I'm giving

you away.  You cause me all this trouble, I'm done.  I'm done."

(Defs. 56.1 Stmt. at ¶ 75; Pl. 56.1 Stmt. at ¶ 75; ECF No. 22,

Ex. D, Deposition of Jenna Hoban, at 55.)

Ms. Sosa testified that although the child's cut was

minor, she decided to send the child to the hospital because of

the action taken by the child and the intention behind it.

(Defs. 56.1 Stmt. at ¶ 77; Pl. 56.1 Stmt. at ¶ 77.)  After the

mother calmed down and agreed to take the child to the

hospital, Ms. Hoban went into the classroom with the child,

where she observed plaintiff bent down in from of the child

saying, "why did you do that to your mother?  I don't know

what's wrong with you."  (Defs. 56.1 Stmt. at ¶ 78.)[3]  Ms. Hoban

then took the child out of the classroom.  (Defs. 56.1 Stmt. at

¶ 79.)  According to defendants, Ms. Hoban was later advised

by another teacher that plaintiff continued saying that she

felt bad for the mother in front of the class; however,

plaintiff "does not stipulate to this statement, which is

inadmissible hearsay."  (Defs. 56.1 Stmt. at ¶ 79; Pl. 56.1

Stmt. at ¶ 79.)

---

[3] Defendants further state that Ms. Hoban advised plaintiff to stay out
of the situation, although plaintiff disputes that Ms. Hoban advised her to
stay out of the situation.  (Defs. 56.1 Stmt. at ¶ 78; Pl. 56.1 Stmt. at
¶ 78.)  The court finds this discrepancy immaterial.

The parties do not dispute that Ms. Sosa testified that after this incident, she removed plaintiff from the classroom and assigned her to the guidance office. (Defs. 56.1 Stmt. at ¶ 81; Pl. 56.1 Stmt. at ¶ 81.) When plaintiff complained about being placed in the guidance office, Ms. Sosa placed her with a teacher with whom she had worked before. (Defs. 56.1 Stmt. at ¶ 83; Pl. 56.1 Stmt. at ¶ 83.)

On April 18, 2008, plaintiff, her union representative, Ms. Sosa, and the Assistant Principal met to discuss the allegation of professional misconduct stemming from the March 7, 2007 incident. (Defs. 56.1 Stmt. at ¶ 84; Pl. 56.1 Stmt. at ¶ 84.[4]) At the meeting, plaintiff admitted that she said, "why are you doing this to your mother," but denied that she yelled at him. (Defs. 56.1 Stmt. at ¶ 85; Pl. 56.1 Stmt. at ¶ 85.) Plaintiff testified that "the only thing I remember saying to the kid is, 'why are you doing this to your mother;'" and that Ms. Hoban and Ms. Sosa made "a big stink, like they did with everything else." (Defs. 56.1 Stmt. at ¶ 86; Pl. 56.1 Stmt. at ¶ 86.) Ms. Sosa found that plaintiff's conduct constituted an act of verbal abuse under the Chancellor's Regulations and the New York State Education Law. (Defs. 56.1 Stmt. at ¶ 88; ECF No. 22, Ex. L, Letter from Ms.

---

[4] Plaintiff's 56.1 Statement is missing the number to designate paragraph 84, but the cited paragraph falls in between paragraphs 83 and 85.

Sosa dated April 29, 2008.) Ms. Sosa noted, and plaintiff agrees that Ms. Sosa noted, that plaintiff's actions were more egregious given that plaintiff had already been suspended for two weeks because of the 10/07 breakfast note incident, discussed above, but plaintiff maintains that she "committed no misconduct whatsoever." (Defs. 56.1 Stmt. at ¶ 87; Pl. 56.1 Stmt. at ¶ 87.)

## C. Plaintiff's Termination

Plaintiff was terminated effective April 29, 2008. (Defs. 56.1 Stmt. at ¶ 89; Pl. 56.1 Stmt. at ¶ 89.) Defendants stated that the reason for plaintiff's termination was her disciplinary record from October 2007 to April 2008. (Defs. 56.1 Stmt. at ¶ 89; Pl. 56.1 Stmt. at ¶ 89.)

Plaintiff filed a grievance alleging that her rights were violated pursuant to the collective bargaining agreement. (Defs. 56.1 Stmt. at ¶ 90; Pl. 56.1 Stmt. at ¶ 90.) On May 5, 2008, plaintiff, plaintiff's union representative, and Ms. Sosa met to discuss the grievance. (Defs. 56.1 Stmt. at ¶ 90; Pl. 56.1 Stmt. at ¶ 90.) Ms. Sosa denied the grievance on the ground that plaintiff had failed to show that her termination violated the collective bargaining agreement. (Defs. 56.1 Stmt. at ¶ 90; Pl. 56.1 Stmt. at ¶ 90.)

Plaintiff then filed her grievance before a Chancellor's Representative. (Defs. 56.1 Stmt. at ¶ 91; Pl.

56.1 Stmt. at ¶ 91.)   On June 13, 2008, the Chancellor's Representative determined that plaintiff's termination was for good and sufficient reason after due consideration, and multiple prior warnings, and that no violation of the collective bargaining agreement occurred.  (Defs. 56.1 Stmt. at ¶ 91; Pl. 56.1 Stmt. at ¶ 91; ECF No. 22, Ex. N, Grievance Decision dated June 13, 2008.)

Plaintiff subsequently challenged her termination before an arbitrator.  (Defs. 56.1 Stmt. at ¶ 92; Pl. 56.1 Stmt. at ¶ 92; ECF No. 22, Ex. O, Opinion and Award dated April 23, 2010.)  On April 23, 2010, the arbitrator issued an Opinion and Award in favor of the Department of Education.  (Defs. 56.1 Stmt. at ¶ 92; Pl. 56.1 Stmt. at ¶ 92.)  According to defendants, the arbitrator found that the "credible record proved that plaintiff did admonish the student who had cut himself in March 2008; that she chose to intervene in that situation even though she had no knowledge of what was happening and was not called to offer assistance; and that plaintiff's lack of appropriate judgment and sensitivity was supported by the record."  (Defs. 56.1 Stmt. at ¶ 93.) Plaintiff does not agree to stipulate to the opinions stated in the arbitrator's decision.  (Pl. 56.1 Stmt. at ¶ 93.)  On June 3, 2008, plaintiff filed with the United States Equal Employment Opportunity Commission a "Notice of Charge of

Discrimination." (ECF No. 22, Ex. P, Charge of Discrimination dated June 3, 2008.) The instant suit followed.

## D. **Plaintiff's Allegations of Age Discrimination**

Plaintiff's undisputed testimony is that throughout her tenure at P.S. 151, Ms. Sosa made discriminatory remarks to her. For example, plaintiff testified that Ms. Sosa made remarks to the effect of plaintiff being "kind of old" and "look[ing] sick," and asking when plaintiff was going to retire. (Defs. 56.1 Stmt. at ¶¶ 17-18; Pl. 56.1 Stmt. at ¶¶ 17-18.)

Specifically, plaintiff points to the following comments that Ms. Sosa allegedly made:

- On multiple occasions, Ms. Sosa told plaintiff that she "looked sick." Ms. Sosa also told plaintiff that she knew people "were old and they died on the job," that plaintiff should "enjoy [her] retirement," and that plaintiff was "kind of too old." (Defs. 56.1 Stmt. at ¶¶ 18-19; Pl. 56.1 Stmt. at ¶¶ 18-19.)
- Ms. Sosa told plaintiff that she had "to get rid of one of the younger paras to take [her]." (Defs. 56.1 Stmt. at ¶ 20; Pl. 56.1 Stmt. at ¶ 20.)
- In October or November 2005, Ms. Sosa told plaintiff that she knew a man who had died without enjoying himself. (Defs. 56.1 Stmt. at ¶ 21; Pl. 56.1 Stmt. at ¶ 21.)
- In December 2005, plaintiff went to Ms. Sosa's office, and both plaintiff and Ms. Sosa complained that they had headaches. (Defs. 56.1 Stmt. at ¶ 22; Pl. 56.1 Stmt. at ¶ 22.) Ms. Sosa said to plaintiff, "you are sick" and that she was going to send plaintiff to the doctor.

(Defs. 56.1 Stmt. at ¶ 22; Pl. 56.1 Stmt. at ¶ 22.)

- Throughout 2006, plaintiff testified that Ms. Sosa removed her from classrooms and told her that it was for her own good. (Defs. 56.1 Stmt. at ¶¶ 24, 26; Pl. 56.1 Stmt. at ¶¶ 24, 26.) Plaintiff testified that she was not given a reason for the transfers, nor did she ever ask why she was being transferred. (Defs. 56.1 Stmt. at ¶ 27; Pl. 56.1 Stmt. at ¶ 27.)

- In late 2007, Ms. Sosa told plaintiff "more than once" that she looked sick and that the children may knock her down and hurt her when he was going up the stairs. (Defs. 56.1 Stmt. at ¶¶ 30-31; Pl. 56.1 Stmt. at ¶¶ 30-31.) Plaintiff responded that she would hold on to the handrail as hard as she could. (Defs. 56.1 Stmt. at ¶ 32; Pl. 56.1 Stmt. at ¶ 32.)

- On three or four different occasions on unspecified dates, Ms. Sosa told plaintiff that she was "old for her [age] to be working there" and Ms. Sosa's children would not let Ms. Sosa work at that age. (Defs. 56.1 Stmt. at ¶ 33; Pl. 56.1 Stmt. at ¶ 33.)

- In 2007, when plaintiff was hospitalized for increased blood pressure, Ms. Sosa remarked to plaintiff's daughter that her own children would not let her work when she was plaintiff's age. (Defs. 56.1 Stmt. at ¶¶ 35-37; Pl. 56.1 Stmt. at ¶¶ 35-37.)


## DISCUSSION

### A. Summary Judgment Standard

The court shall grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A fact is material if it might affect the outcome of the suit under the governing law." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (citing *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Roe*, 542 F.3d at 35). Moreover, no genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The court must construe the facts in the light most favorable to the nonmoving party and all reasonable inferences and ambiguities must be resolved against the moving party. *Id.* Nevertheless, the nonmoving party may not rest merely on allegations or denials

but must instead set out specific facts showing a genuine issue for trial. *See id.* ("To defeat a summary judgment motion, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation.") (citations omitted).

"Employment discrimination cases raise special issues on summary judgment." *Kenney v. New York City Dep't of Educ.*, No. 06-CV-5770, 2007 U.S. Dist. LEXIS 77926, at *7 (S.D.N.Y. Oct. 22, 2007). Specifically, employment discrimination cases that involve a dispute concerning the "employer's intent and motivation," may not be suitable for summary judgment. *Id.; see also Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). The Second Circuit has noted, however, that "we went out of our way to remind district courts that the impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal quotation marks and citations omitted); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) ("trial courts should not 'treat discrimination differently from other ultimate questions of fact.'") (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993)); *Holcomb*, 521 F.3d at 137 ("Even in the discrimination context, however, a plaintiff must provide

more than conclusory allegations to resist a motion for summary judgment").

**B. Legal Standard for ADEA Claims**

Under the ADEA, it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "The class protected by this statutory prohibition is limited to persons 40 years of age or older." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005). Claims under the ADEA are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973). To establish a *prima facie* case of age discrimination under the ADEA a plaintiff must demonstrate that: "(i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination, such as the fact that the plaintiff was replaced by someone substantially younger." *Woodman*, 411 F.3d at 76 (citations omitted).

If plaintiff can establish a *prima facie* case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason to support its employment decision.

18

*Woodman*, 411 F.3d at 76; *see also McDonnell Douglas*, 411 U.S. at 802-03.   This "burden is one of production, not persuasion . . . and involves no credibility assessment of the evidence." *Pathare v. Klein*, No. 06-CV-2202, 2008 U.S. Dist. LEXIS 69119, at *12 (S.D.N.Y. Sept. 12, 2008) (citations omitted), *aff'd*, 347 F. App'x 646 (2d Cir. Sept. 30, 2009).

If defendant satisfies its burden, plaintiff must present evidence to demonstrate that defendant's reason is a mere pretext for an impermissible discriminatory motive. *McDonnell-Douglas*, 411 U.S. at 804.   In the summary judgment context, this means plaintiff must "establish a genuine issue of material fact either through direct, statistical, or circumstantial evidence as to whether the employer's reason for its decision to discharge is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1225 (2d Cir. 1994).

C. <u>**Analysis of Plaintiff's ADEA Claims**</u>

Defendants contend that plaintiff has failed to establish a *prima facie* case of age discrimination.   For purposes of the instant motion, however, defendants do not dispute that plaintiff has satisfied the first and third elements of the *prima facie* analysis: that because plaintiff

was over age 40, she is a member of a protected class, and because plaintiff was terminated, she suffered an adverse employment action. (ECF No. 23, Memorandum of Law In Support of Defendants' Motion for Summary Judgment ("Defs. Mem.") at 2-3.)

As to the second and fourth elements, defendants contend that plaintiff has failed to establish that she was qualified for her position, or that an inference of discrimination exists, because defendants have "undisputed non-discriminatory legitimate reasons that support [plaintiff's] termination." (Defs. Mem. at 2-3.) Specifically, defendants point to three "discrete acts of professional misconduct" that led to plaintiff's termination. (Defs. Mem. at 3.)

Plaintiff contends that defendants' argument is limited to the second element, whether plaintiff was qualified for the job. Plaintiff argues that defendants "misunderstand[] . . . that prong of a *prima facie* case. Plaintiff's burden in this regard is not to show good performance or even average performance but merely to show [s]he had the basic qualifications to fulfill [her] position." (ECF No. 25, Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Mem.") at 2-3 (citation omitted.))

As to the second element, the court agrees with plaintiff that she was qualified for the job. The Second

Circuit has held that to show qualification, the plaintiff need not show perfect performance or even average performance. Instead, she need only make the minimal showing that she possesses the basic skills necessary for performing the job. *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001). Based on the undisputed evidence that plaintiff had worked for the Department of Education for twenty years and only had disciplinary incidents in the last year of her employment, plaintiff satisfies this standard.

However, plaintiff's claim fails at the fourth step of the *prima facie* case because the factual record does not support an inference of discrimination. Plaintiff testified that Ms. Sosa made several remarks that plaintiff believed were related to her age. Specifically, plaintiff testified that Ms. Sosa told plaintiff she was "kind of old," and "old for her [her] age to be working there," asked "when was [she] going to leave," and said that plaintiff "looked sick" and should "enjoy [her] retirement." (Pl. 56.1 Stmt. at ¶¶ 17-33.) Plaintiff also testified that Ms. Sosa said she had to "get rid of one of the younger paras to take [her]." (Pl. 56.1 Stmt. at ¶ 20.)

Assuming for purposes of this motion that plaintiff's allegations are true, the court finds that plaintiff has not established an inference of discrimination. Ms. Sosa's comments in 2006 and 2007 that plaintiff "looked sick" are not

indicative of animus based on age.  Indeed, plaintiff was hospitalized for a week in February 2007 due to increased blood pressure, and thus, a reasonable fact-finder could conclude that plaintiff did, in fact, look sick at the time Ms. Sosa made the comments.  Further, Ms. Sosa's comments regarding plaintiff's age do not satisfy plaintiff's *prima facie* burden because remarks made distant in time from the allegedly discriminatory behavior do not tend to support plaintiff's claim that her discharge was the product of discrimination. *Del Franco v. New York City Off-Track Betting Corp.*, 429 F. Supp. 2d 529, 537 (E.D.N.Y. 2006) (three month lapse between allegedly discriminatory comments and termination); *Argueta v. N. Shore Long Island Jewish Health Sys.*, No. 01-CV-4031, 2003 U.S. Dist. LEXIS 20456, at *22 (E.D.N.Y. Nov. 6, 2003) (six month lapse between allegedly discriminatory comments and termination).  The latest allegedly ageist comment to which plaintiff testified occurred "around the end of 2007," when Ms. Sosa remarked that the "children may knock her down and hurt her when she was going up the stairs." (Defs. 56.1 Stmt. at ¶ 31; Pl. 56.1 Stmt. at ¶ 31.)  Setting aside whether this comment even suggests discrimination on the basis of age, it took place more than five months before plaintiff's termination on April 29, 2008.  The lapse in time between this comment and

plaintiff's termination mitigates against plaintiff's claim that her discharge was the product of discrimination.

Accordingly, the record does not contain sufficient evidence to satisfy the fourth element of the *prima facie* case, that the adverse employment action took place under circumstances giving rise to an inference of discrimination. *See, e.g.*, *Valtchev v. City of New York*, 400 F. App'x 586, 592 (2d Cir. Nov. 15, 2010) (affirming district court's decision to grant summary judgment and finding that plaintiff had not satisfied the fourth element of the *prima facie* case where the allegedly adverse employment actions were independently based on plaintiff's "deficient teaching performance").

Further, even if the court were to deem Ms. Sosa's remarks sufficient to establish a *prima facie* case, plaintiff's claim would still fail because she cannot overcome defendants' showing that they would have taken the same employment action against her, in any event. *See, e.g.*, *Papasmiris v. Dist. 20 New York City Dep't of Educ.*, 299 F. App'x 97, 98 (2d Cir. 2008) (affirming district court's decision granting summary judgment to defendants where the evidence of legitimate termination included several letters that plaintiff had behaved inappropriately on a school trip and several instances of misconduct by plaintiff, including raising her voice to a student); *Douglas v. New York City Dep't of Educ.*, No. 09 Civ.

4847, 2010 U.S. Dist. LEXIS 129183, at *7 (S.D.N.Y. Dec. 3, 2010) (finding that even if plaintiff could establish a *prima facie* case of age discrimination, because a Hearing Officer had found that plaintiff engaged in misconduct for which termination was required, defendants were entitled to entitled summary judgment because there was no genuine issue of act as to whether plaintiff's age was the but-for cause of his termination).[5] A reasonable fact-finder confronted with the evidence of plaintiff's disciplinary incidents in the year preceding her termination, as discussed above, could only conclude that defendants would have brought charges against plaintiff for termination, regardless of her age.

Furthermore, plaintiff's bald contention that the charges against her were "at least exaggerated and at worst fabricated to justify a draconian penalty" is not supported by the record before the court. (Pl. Mem. at 4.) Although it is undisputed that plaintiff did not refuse food to a child, defendants' action against plaintiff was based on legitimate,

---

[5] Because the court independently concludes that plaintiff cannot overcome defendants' showing that they would have terminated plaintiff in any case, the court need not rely on the decision of the arbitrator. Accordingly, the court need not address the parties' disagreement over the weight to be accorded to the Second Circuit's decision in *Collins v. New York Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002), in which the court found that where a neutral arbitrator had issued a decision in favor of the employer and where plaintiff has not made a claim that the arbitration was biased or discriminatory, the plaintiff was required to present strong evidence that the decision was wrong as a matter of fact or that the impartiality of the proceeding was somehow compromised.

nondiscriminatory reasons, including but not limited to plaintiff's threat to withhold a meal from a child, thereby threatening a child's welfare. Indeed, as defendants affirm, the threat to withhold a meal by itself, without any actual food refusal, could have warranted plaintiff's termination. (Defs. 56.1 Stmt. at ¶ 52.) In addition, regardless of whether plaintiff's comments to the child who had cut himself constituted "abuse," plaintiff admitted that she had asked the child why he would do this to his mother. The court agrees with plaintiff's supervisors that this comment by plaintiff indicates evidences a lack of "support and encouragement to a student under great distress . . . [and] a lack of sympathy and understanding." (Defs. Reply at 4.)

Accordingly, the court grants defendants summary judgment on plaintiff's ADEA claim.

### D. **Analysis of Plaintiff's Retaliation Claim**

Plaintiff's complaint alleges that "[b]y initiating pretextual discipline, involving false, exaggerated, and arbitrary accusations against Plaintiff that culminated in her termination after she complained of discrimination, Defendants further violated the [ADEA]." (Amend. Compl. at ¶ 34.) Defendants respond that "plaintiff has not identified any protected activity in whish [sic] she allegedly engaged, nor is there evidence of any protected activity in the record, outside

25

of plaintiff's Equal Employment Opportunity Complaint, which was filed after she was terminated." (Defs. Mem. at 14.) Plaintiff responds, without citation to admissible evidence in the record, that the record contains documentary evidence of defendants' receipt of plaintiff's claim of age discrimination "before she was stripped of her duties, disciplined for the second time, and fired." (Pl. Mem. at 7-8.)

"To establish a prima facie case of retaliation, a plaintiff must show that: (1) she participated in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between her protected activity and her adverse employment action." *Dixon v. Int'l Fed'n of Accountants*, 41 F. App'x 107, 110 (2d Cir. Mar. 25, 2011). Even if a plaintiff sets forth a *prima facie* case, however, this establishes only a rebuttable presumption of retaliation, and where the defendant identifies a legitimate, non-retaliatory reason for the adverse employment action, the burden shifts back to the plaintiff to show that the defendant's articulated reason is a pretext for retaliation. *Id.* (citing *Stratton v. Dep't for the Aging for the City of New York*, 132 F.3d 869, 879 (2d Cir. 1997)).

It is not clear from the record what protected activity plaintiff alleges that she was participating in. Plaintiff points to Defendants' Exhibit I to argue that "at

least by January 17, 2008, plaintiff was on record as complaining that she was being discriminated against on account of her age in a grievance conference attended by Sosa and a District Superintendent's representative." (Pl. Mem. at 8.) Exhibit I, however, is a grievance decision, dated January 28, 2008, relating to the October 9, 2007 breakfast note incident discussed above. The only reference to age discrimination is that plaintiff grieved that "[t]he principal has engaged in age discrimination by speaking to the grievant on numerous occasions about her retiring." (ECF No. 22, Ex. I, Grievance Decision dated January 28, 2008.) The record contains no details regarding to whom plaintiff complained about the purported discrimination or when she did so. Further, as discussed above, plaintiff fails to establish a causal connection between her complaints of discrimination and her termination.

Even assuming, *arguendo,* that plaintiff established a *prima facie* case of retaliation, for the reasons set forth above, plaintiff's disciplinary history constituted a legitimate, non-retaliatory reason for her termination, and she fails to identify any evidence to suggest that this reason was pretextual. Accordingly, plaintiff's retaliation claim is dismissed and defendants' motion for summary judgment on this claim is granted.

### E. <u>Analysis of Plaintiff's State Claims</u>

Finally, in addition to her federal causes of action, plaintiff asserts claims for age discrimination under New York State Human Rights Law ("NYSHRL") § 296 and New York City Human Rights Law ("NYCHRL") § 8-107.

The legal standards for age discrimination under the ADEA and NYSHRL are the same. *See, e.g.*, *Woodman,* 411 F.3d at 71 n.1 ("[Plaintiff's] age discrimination claims under state and city law are subject to the same analysis as her ADEA claim."); *Cozzi v. Great Neck Union Free Sch. Dist.*, No. 05-cv-1389, 2009 U.S. Dist. LEXIS 74305, at *53 (E.D.N.Y. Aug. 21, 2009) ("The legal standards for age discrimination under the ADEA and NYSHRL are the same. . .").  Accordingly, for the reasons set forth above, plaintiff's claims under New York state law are dismissed.

On the other hand, the standard for claims under NYCHRL is broader than the standard for applicable claims under state or federal law.  The Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), which amended the NYCHRL, provides, in relevant part, that

> [T]he provisions of New York City's Human
> Rights Law are to be construed
> independently from similar or identical
> provisions of New York state or federal
> statutes. Interpretations of New York state
> or federal statutes with similar wording
> may be used to aid in interpretation of the

> New York City Human Rights Law, viewing
> similarly worded provisions of federal and
> state civil rights laws as a floor below
> which the City's Human Rights law cannot
> fall, rather than a ceiling above which the
> local law cannot rise.

N.Y.C. Local Law No. 85 of 2005, § 1 (Oct. 3, 2005). Rather than requiring "but for" causation, a plaintiff alleging a claim under NYCHRL need only satisfy the "mixed-motive" standard, whereby the plaintiff need only show that age was "a motivating factor" in her dismissal. *See Attard v. New York City Dep't of Educ.*, No. 05-cv-2129, 2010 U.S. Dist. LEXIS 104802, at *14-15 n.3 (E.D.N.Y. Sept. 30, 2010); *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 505-06 (S.D.N.Y. 2010); *Sicular v. N.Y.C. Dep't of Homeless Servs.*, No. 09 Civ. 0981, 2010 U.S. Dist. LEXIS 10089, at *51-52 n.17 (S.D.N.Y. Feb. 4, 2010) ("NYCHRL is to be more liberally construed [than ADEA claims].").

Nonetheless, even applying the less burdensome standard, the court finds that age was not a motivating factor in plaintiff's termination. As discussed above, plaintiff's termination was based on three documented instances of misconduct, and the allegedly ageist comments occurred too temporally distant from plaintiff's termination. Accordingly, plaintiff's claims under NYSHRL and NYCHRL are dismissed and summary judgment is granted.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in its entirety.  The Clerk of the Court is respectfully requested to enter judgment in defendants' favor and close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
        August 16, 2011

                                    /s/
_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York